May it please the Court, my name is Brian Funk. I represent Mr. Torres-Ordonez. I'd like to reserve two minutes for rebuttal. In a nutshell, the issue in this case is whether or not under the Melendez-Diaz... Can I ask a question? I set this one out of time this week. Did you produce this brief? I did. It's practically impossible to read. I mean, in the sense that the formatting is crazy. The paragraphs are not normal paragraph. I mean, maybe this is a result of the printout that you gave us, but it's really I'm not talking substantively. I'm saying that the formatting is practically impossible to make any sense out of. So please don't take us to court. I'm a trial lawyer, Your Honor. I don't do poet work. Well, I know, but people usually know that paragraphs are indented rather than having the second sentence indented, the first one being out to the margin. It's just completely backwards and crazy. Anyway, go ahead. The issue in this case is under the analysis of Melendez-Diaz whether or not fingerprints, which is the basis of RAF sheets, should be considered. Testimony under Crawford, in other words, our position is that in order for the government to prove up a prior and they're using a RAF sheet, the fingerprints have to be produced and have to be analyzed by an expert. That was not done in this case. This case, the defendant contested his prior conviction. He indicated that somebody else had his identification and it was an identity theft case, and the prior was not his. We went to trial on the case, and the government did not proffer any evidence under analysis at all as to the prior, which is an aggravated felony, which would then change his guideline range from a plus 8 to a plus 16, effectively doubling his sentence. We objected to that in due course. What standard do you think applies to the determination of whether this was, in fact, of the prior? The evidence supporting the 16-level enhancement. As far as the current status? It's a preponderance of evidence under the ---- Why isn't it clear and convincing evidence under our case law that says that for large enhancements? I agree. It is, but ---- You didn't say that. You just said the opposite. Almedez-Torres says that the government only has to prove prior to a preponderance, but in this case where it is a substantial increase, it should be clear and convincing. That is the argument. You didn't ---- When the district judge ---- Your objection in the district court was as to the sufficiency of the evidence, not to the standard that the court applied, right? That's correct. All right. So that argument, what standard isn't ---- You're not saying the district court applied the wrong standard. You're saying the district court looked at the stuff that the district court looked at was not sufficient, right? Correct. Also, since that time, I believe there's been a change in law based on the Melendez-Diaz case, and I think that that changes the standard of these cases, and that's what I'm arguing is a case of first impression. I believe that prior convictions, when they do change the nature of the case, in other words, in an unarmed career case, they have to prove that to be on a reasonable doubt to the jury. But on immigration cases, we haven't had to do that under Almedez-Torres. However, the Supreme Court said in Almedez-Torres, we're leaving open the issue whether or not there should be a higher standard of proof on cases where sentences are increased. And under the Booker case and under Cunningham, the Supreme Court has revisited this area and has always been leaning more towards making the government do a higher standard of proof. So at the trial court, yes, I did not object to that standard of proof, but I think that since the time of the trial that the law has changed. The time of the trial was way, way, way after Almedez-Torres. And besides what Almedez-Torres is in the relative cases, I'm not really understanding your argument. But anyway, go ahead with it. So your basic point is that there was a procedural error. Is that your point with regard to the proof of the prior? Yes. By just relying on the probation report for the proof of the conviction, notwithstanding the fact that that was objected to and there was not sufficient evidence to produce the judge error. Well, now, they had a matching CINI number. There was also a photo, and your client was seated right there. And the judge said, she looks like you. Well, in the transcript, I don't mean to interrupt, Your Honor, but on page 18 is actually a copy in the excerpts of that photograph. And you can't tell anything from that photograph. I think the judge was just trying to help the government at that point and said, Well, it looks kind of like you, but the hair is different. I'm not sure. So I don't believe if you're really saying it. Well, I can't compare it to your client because your client's in jail, right? That's correct. In prison or whatever. So I think the trial judge at the time actually equivocated as to the photograph. But she looked at the photograph and she looked at the booking number on the fingerprints that were proffered and said that that was enough for her. And I feel that that's not Can you explain to me the significance of the CINI number or whatever it is? I mean, I gather that there are earlier documents that have this number and later documents. But how is that tied into the fingerprints? Okay. The government attorney argued that that was proof that the fingerprints belonged to my clients. Okay. CI numbers are something that the California Department of Corrections gives somebody the first time that they're arrested. Based on their fingerprints? No, that's just Just based on that. The booking number. In other words, today's the day you come in and you get this number if you enter the system. Okay. And every time somebody enters the system with that name, they give them that number again. That name or those fingerprints? Well, that's the issue, whether or not the fingerprints are examined or not. They book people and they print them, but nobody looks at the fingerprints. They just go along with the file. And when somebody calls up a number on a rap sheet, it's the number. So there's never been any analyst by an expert who actually looked at the fingerprints and says Well, I guess, are you asking for I know that there isn't something before here that, you know, a continuance to have the fingerprints compared to your client on that. That's not a burden of proof for anyone. Well, so you're striking, you're not saying he's factually innocent. You're just saying that the CINI number matching to the other with the picture and everything, you're basically saying they didn't, it was insufficient as a matter of law? Yes. Okay. In other words, the fingerprints should have been analyzed by an expert because required So what's your best case to say that what we know, your best case, what's your best case that says you can never, you always have to have fingerprint comparison to prove a prior? Your Honor, the best case that I can cite to the court is United States v. Whelan, 2005, Court of Appeals, 9th out of Washington, 420, Fed Third, 1062, which certainly was denied in 2006 at 126, Supreme Court, 11-9. Well, what if the picture were crystal clear and there was some really distinctive tattoo on the forehead of the person in the picture and your client's sitting right there with that same tattoo on the forehead? That would be a different standard of proof. That was not what happened in this case. In other words, if the judge had a crystal clear photograph, which was obvious, and if the judge said on the record Okay. So there really isn't any authority that says it always has to be with fingerprints. That's correct. It's the whole thing, whatever the whole totality is. Well, my understanding is that the government has to rely, I mean, the judge has to rely in a sentencing case on credible evidence. But you did, in fact, challenge the identity. I mean, you did say this wasn't him. That's correct. So that's where you put the government on notice that you had a, that they, because I assume in, you know, 99.9 percent of the cases, there's, you know, the conviction records come in and nobody ever says that isn't me and the government doesn't put on fingerprint evidence because nobody ever asked. That's correct. So you have some burden, at least to say I have a problem here. In other words, we have a burden to Raise the issue. Yes. We raise the issue. And that was done in this case. Okay. If you want to save me time, perhaps you should. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Nima Rahmani for the United States. This case is controlled squarely by this Court's decision. And my name, Quavo, relates to Romero Rendon, all of which, again, are squarely on point. In this case, the government presented far more evidence than was presented in each of those decisions. Let me take the question that I asked your colleague. What is the, isn't there a clear and convincing evidence standard that applies here? No, Your Honor. And I do recognize there is some ambiguity. Why? The preponderance standard is appropriate. The clear and convincing standard, according to Felix and Romero Rendon, applies in extraordinary circumstances. Well, meaning, isn't a 6th level enhancement, 16th level enhancement almost automatically in extraordinary circumstances? Your Honor, in the Felix decision, it was the denial of safety valve which resulted in a 10-year minimum mandatory sentence. And in that case, this Court held that the preponderance standard should apply. So the government would submit that the priming standard is appropriate in this case, notwithstanding the three-point swing in the value. Do you think this issue is before us? No, Your Honor. And at sentencing, the defense conceded that it was the propensity standard. And the government would submit that the preponderance standard is appropriate in this case. But under either standard, the overwhelming evidence is that this conviction pertained to the defense, to the defense. That is a pre-sentence report in the record. Yes, Your Honor. It was filed under seal. But do we have any reason to think that that was what the policeman, what the police, what the judge was ---- did the judge adopt the pre-sentence report? Yes, Your Honor. Where was that? She overruled the defendant's objections. But did she say when she was determining the 16th enhancement that she was doing it in reliance on the pre-sentence report? Amongst other factors, yes, Your Honor, I do believe so. Where was that? I didn't see that. Your Honor, on to page 31. The court just concludes that the defendant is the same person. Right. But she didn't say ---- as far as one can tell, she did that based on the record before her and not on the discussion of the pre-sentence report. I do note that she did overrule the objections to the pre-sentence report. All right. Go ahead. So, Your Honor, turning to the three cases that are on point, in Marning-Cuevas, all the court had was just the probation officer's explanation, relying on criminal history. That criminal history was never provided to the court. We have more than that in this case. In Felix, we just had computerized records. Again, we have more than that in this case. And in Romero-Randon, the court relied entirely on the pre-sentence report. What exactly do we have here that demonstrates that this is the same guy? There's this photo, which we can't even review because you can't tell anything from these photos. What else do we have? Certainly. In addition to the pre-sentence report. The judge didn't rely on the pre-sentence report. Your Honor, we have the felony complaints in this case, which was not provided in any of the other three decisions before, which include the defendant's CINI number as well as his date of birth. We also have the California Municipal Court Certificate in Order of Magistrate, which also includes the defendant's date of birth. We have the abstract of judgment. We have the California Municipal Court Minutes. And we have a fingerprint card from the defendant's prior 1326 arrest, which also includes the CINI number and the defendant's date of birth. We have more information in this case than any of the court's prior decisions addressing this issue. But what you seem to be arguing that there's some way in which this all ties back to his fingerprints, and that's what I'm not understanding. That nobody tried to say that nobody has ever looked at his current fingerprints and the fingerprints on these earlier cards and saying they're the same person. Well, Your Honor, in this case there was no evidence that, and I spoke to Mr. Funk about this this morning, that the fingerprints from the 1992 conviction were even available. And though the court was not required to and did not abuse this. But this is what you keep saying something about this was a fingerprint-based document. What do you mean by that? The rap sheet. So the CINI number is a sign when a defendant is first arrested in state custody. Right. And it's supplemented based on fingerprints when there are subsequent arrests. So you're suggesting that we could infer, although there was no direct testimony, that every time this guy is arrested somebody is checking the fingerprints. And every time the same CINI number is assigned to him, the fingerprints are being checked to see if it's the same guy. Yes, Your Honor. And this is on page 5 of the excerpt. And probation does indicate that the CINI rap sheet is indeed fingerprint-based. Yeah. It's fingerprint-based, meaning that each time the fingerprints are checked. Yes, Your Honor. But they weren't checked this time. They were checked. What wasn't checked is you didn't print them in court and compare it to what was on the document that had the prints on it, right? Yes, Your Honor. There were four sets of fingerprints produced in this case, none of which were from the 1992 robbery conviction. There's no evidence that those were available. I see. So what you're saying is that this conviction was tied back to some of the other ones by fingerprints and to the number of the 1992 one. Yes, Your Honor. Which had the same number, but you don't have the fingerprints. Yes, Your Honor. What did the picture look like compared to the defendant? Your Honor, I was not present in court. One of my colleagues handled the sentencing. So you haven't seen the defendant either? I have not seen the defendant either, Your Honor. But the court did indicate, the district court did indicate that it bore more than a strong resemblance to the defendant and, in fact, that it indeed appeared to be the defendant. I don't have any further questions. Can you just tell me one more time why you think the heightened standard of proof doesn't apply here? Yes, Your Honor. I understand it's a significant question of whether it's been raised. But leaving that aside for the moment, it seems to me under the case law that it should have been clear and convincing evidence. The question is why not? So, again, in Felix, this court indicated that the clear and convincing standard should apply in exceptional circumstances. The circumstances may be different. We have lots of cases about the standard. And I don't know the particular case you're relying on, but many of them seem to apply – seem to rely principally on the degree of increase that the enhancement is giving. And here, that degree of increase seemed to be more or at least as much as applied in many of the cases in which we have applied a clear and convincing evidence standard. Fair enough. Felix is 561F3-104. And haven't we applied this clear and convincing standard to this particular 16-point increase many different times? Your Honor, I know the Court is not addressing the issue, but the government doesn't argue. Felix doesn't actually say exceptional circumstances. It's an extremely disproportionate effect. I believe that's Romero-Rendon. Oh, you're reading from Felix right now. I believe Romero-Rendon says extremely disproportionate. I believe I'm reading from Felix. All right. Well, anyway, thank you very much. Thank you, Your Honor. Your Honors, I would just, even though I didn't cite it in my moving papers, I'd ask the Court to consider Washington v. Riccuno, R-E-C-U-E-N-C-O, 548 U.S. 212, at page 220, which is where Justice Thomas basically recanted his decision in the alma justoris and says basically that he was asking that, pursuant to Shepard and under Booker, that the standard, the higher standard on prior convictions be applied. With that, if the Court has any questions, I would submit. Thank you very much. Thank you, counsel. The case of United States v. Torres-Rodone is submitted. And we will go on to Tweet for Justice McKeown, if that's how you say the name. Do we have two lawyers on this? Good morning, Your Honor. Just a minute. There's only one of you. Okay.
judges: Noonan, Berzon, Callahan